**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 10-cv-61942-MGC

TIFFANY (NJ), LLC,
a Delaware limited liability company,

                    Plaintiff,

vs.

KEY LIN and DOES 1-10,

                    Defendants.

_____/

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION**

        Plaintiff submits this Memorandum of Points and Authorities in support of its *Ex Parte*
Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order
Authorizing Alternate Service of Process on Defendant (the "*Ex Parte* Application").

**I.       INTRODUCTION**

        Plaintiff, Tiffany (NJ), LLC, ("Tiffany" or "Plaintiff") is suing Defendant Key Lin ("Lin"
or "Defendant") for federal trademark counterfeiting and infringement, false designation of
origin, and cyberpiracy.  As alleged in Tiffany's Complaint, Defendant and various unknown
associates are promoting, advertising, distributing, offering for sale and selling counterfeit and
infringing Tiffany branded products within this Judicial District through various fully interactive
commercial Internet websites operating under at least the domain names identified in Schedule
"A" to Tiffany's *Ex Parte* Application (collectively the "Subject Domain Names"), filed
herewith.[1]

_____

[1] See Declaration of Stephen M. Gaffigan in Support of Plaintiff's *Ex Parte* Application ("Gaffigan Decl."), filed
herewith at ¶4 and Composite Exhibit 3 attached thereto, a chart outlining the relationship between each of the
Internet websites identified herein. Although the Subject Domain Names are all registered in false names, Plaintiff's
counsel is aware that at least one of the operators of the websites existing thereunder is the Defendant, Key Lin.
Plaintiff's counsel obtained this knowledge via information made public after discovery in the case styled Chanel,
Inc. v. Key Lin, Case 0:10-cv-60303-FAM (S.D. Fla. 2010).  Also, Defendant Lin registered the Subject Domain
Names using aliases that are the same aliases used to register the Subject Domain Names in the case styled Louis
Vuitton Malletier, S.A. v. Key Lin, Case 10-cv-61640-PCH (S.D. Fla. 2010).  The following aliases are used in

The activities of Defendant constitute willful and intentional infringement and counterfeiting of Tiffany's trademarks, in total disregard of Tiffany's rights, and have taken place in spite of Defendant's knowledge that his use of Tiffany's trademarks was and is in direct contravention of Tiffany's rights.  Moreover, Defendant's registration of multiple domain names which incorporate at least one of the Tiffany registered trademarks constitutes cyberpiracy in violation of 15 U.S.C. § 1125(d).  Defendant's unlawful activities have caused and will continue to cause irreparable injury to Tiffany.  Among other things, Defendant has (1) deprived Tiffany of its right to determine the manner in which Tiffany's trademarks are presented to the public through merchandising; (2) defrauded the public into thinking Defendant's goods are valuable, authorized goods of Tiffany; (3) deceived the public as to Tiffany's sponsorship and/or association of Defendant's goods and the websites through which such goods are marketed and sold; and (4) wrongfully traded and capitalized on Tiffany's reputation and goodwill and the commercial value of Tiffany's trademarks. Defendant should not be permitted to continue his unlawful activities and must be enjoined from using counterfeits and infringements of Tiffany's trademarks in connection with his goods and domain names.

Additionally, Tiffany requests an order allowing service of process on Defendant via electronic mail ("e-mail") and publication, pursuant to Federal Rule of Civil Procedure 4(f)(3). E-mail and publication service is appropriate and necessary in this case, because Defendant (1) operates anonymously via the Internet using false physical address information in the registrations for his Subject Domain Names in order to conceal his location and avoid liability for his unlawful conduct; and (2) relies solely on electronic communications to operate his businesses.  Notwithstanding Defendant's concealment of his physical location, Tiffany still has the ability to contact Defendant directly and provide notice of Tiffany's claims against him. Specifically, some of the contact e-mail addresses Defendant provided to his domain name registrars have been determined to be current and reliable means by which Defendant may be apprised of the pendency of this action.  Additionally, Tiffany has created a publication website and will post a copy of the Summons, Complaint and *Ex Parte* Application and supporting papers on the website. Tiffany respectfully submits that an order allowing service of process, and

---

connection with the domain names in the instant matter as well as the domain names in the <u>Louis Vuitton Malletier, S.A. v. Key Lin</u>, matter: Christof Hieber, Jim Backey, Li Li, Relando Messi, Rett Walters, and Toronto Sport.

all subsequent pleadings and discovery, via e-mail and publication in this case will benefit all parties and the Court by ensuring Defendant receives immediate notice of the pendency of this action and allowing this action to move forward expeditiously.  Absent the ability to serve Defendant by e-mail and publication, Tiffany will almost certainly be left without the ability to pursue a remedy.

II.    **STATEMENT OF FACTS**

    A.    **Tiffany's Rights.**

Tiffany is, and at all times relevant hereto has been, the owner and/or exclusive licensee of all rights in and to the following federally registered trademarks:

| Trademark | Registration Number | Registration Date |
|---|---|---|
| TIFFANY & CO | 0,023,573 | September 5, 1893 |
| TIFFANY | 0,133,063 | July 6, 1920 |
| TIFFANY & CO. | 1,228,189 | February 22, 1983 |
| TIFFANY | 1,228,409 | February 22, 1983 |
| TIFFANY & CO. | 1,283,306 | June 26, 1984 |
| Paloma Picasso | 1,460,510 | October 13, 1987 |
| T & CO. | 1,669,365 | December 24, 1991 |
| PERETTI | 1,787,861 | August 17, 1993 |
| ELSA PERETTI | 1,799,272 | October 19, 1993 |
| | 2,359,351 | June 20, 2000 |
| LUCIDA | 2,526,034 | January 1, 2002 |
| ATLAS | 2,886,655 | September 21, 2004 |

 (collectively the "Tiffany Marks") which are registered in International Class 14, and are used in connection with the manufacture and distribution of, among other things, high quality jewelry, including bracelets, necklaces, pendants, rings, and key rings. (Declaration of Steven Costello in

Support of Plaintiff's *Ex Parte* Application ("Costello Decl.") ¶ 4, filed herewith; <u>see</u> <u>also</u> United States Trademark Registrations of the Tiffany Marks at issue ("Tiffany Trademark Registrations") attached as Composite Exhibit 1 to the Costello Decl.)

The Tiffany Marks are symbols of Tiffany's quality, reputation, and goodwill and have never been abandoned.  (Costello Decl. ¶ 7.)  Moreover, Tiffany has expended substantial time, money, and other resources developing, advertising, and otherwise promoting its trademarks. (Costello Decl. ¶¶ 6-7.)  Accordingly, the Tiffany Marks qualify as famous marks as the term is used in 15 U.S.C. § 1125(c)(1).  (Costello Decl. ¶ 7.)

Furthermore, Tiffany has extensively used, advertised, and promoted its Marks in the United States in association with jewelry, including bracelets, necklaces, pendants, rings, and key rings, and related goods, and has carefully monitored and policed the use of its Tiffany Marks.  (Costello Decl. ¶ 7.)  As a result of Tiffany's efforts, members of the consuming public readily identify products bearing the Tiffany Marks as being quality merchandise sponsored and approved by Tiffany. (<u>Id</u>.)  Accordingly, the Tiffany Marks have achieved secondary meaning as identifiers of high quality jewelry, including bracelets, necklaces, pendants, rings, and key rings. (<u>Id</u>.)

At all times relevant hereto, Defendant has been aware of Tiffany's (a) ownership of the Tiffany Marks; (b) exclusive rights to use and license such Marks; and (c) substantial goodwill embodied in, and favorable recognition for, the Tiffany Marks for jewelry, including bracelets, necklaces, pendants, rings, and key rings.

**B.      Defendant Is Engaged in Illegal Activities Within This District.**

Tiffany's evidence demonstrates Defendant is engaged in the fraudulent promotion, advertisement, distribution, sale, and offering for sale of goods bearing counterfeits and of the Tiffany Marks.  Defendant does not have, nor has he ever had, the right or authority to use the Tiffany Marks for any purpose.  (Costello Decl. ¶ 9.)  However, despite his known lack of authority to do so, Defendant is promoting and otherwise advertising, distributing, selling and/or offering for sale at least jewelry, including bracelets, necklaces, pendants, rings, and key rings bearing counterfeit and infringing trademarks which are exact copies of the Tiffany Marks ("Defendant's Goods").  (Costello Decl. ¶ 9; Declaration of Jason Holmes in Support of Plaintiff's *Ex Parte* Application ("Holmes Decl.") ¶¶ 4-6, filed herewith; <u>see</u> <u>also</u> Relevant web

pages from Defendant's Internet websites ("Defendant's Websites") attached as Composite Exhibit 1 to the Gaffigan Decl.)  Moreover, given Defendant's slavish copying of the Tiffany Marks, overall design, color scheme, and products, genuine goods bearing the Tiffany Marks and Defendant's Goods sold under identical marks are indistinguishable to consumers at the point of sale.  Section 1127 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Also, using the "ocular test" of direct comparison, courts have found that even marks which are slightly modified from the registered marks copied are to be considered counterfeit marks.  See Fimab-Finanziaria Maglificio vs. Helio Import/Export, Inc., 601 F. Supp. 1 (S.D. Fla. 1983).

To verify the counterfeit nature of Defendant's products, Tiffany's investigator, Jason Holmes ("Holmes"), accessed one of the Internet websites operated by Defendant, tiffanyandcofrance.net, and placed an order for the purchase of a Tiffany branded Heart Tag key ring. (Holmes Decl. ¶ 4 and Composite Exhibit 1 attached thereto.)  On September 13, 2010, Holmes received a package containing the Tiffany branded Heart Tag key ring he purchased from Defendant via the tiffanyandcofrance.net website, which was shipped directly to his address located in Wilton Manors, Florida. (Holmes Decl. ¶ 5 and Composite Exhibit 2 attached thereto.) The package contained a Tiffany branded pouch, gift box and gift bag, which were included with his purchase. (Id.)  The Heart Tag key ring and packaging bearing the Tiffany Marks purchased by Holmes from the tiffanyandcofrance.net website were turned over to Tiffany's representative Steven Costello ("Costello"), who inspected the items and determined them to be non-genuine Tiffany products. (Holmes Decl. ¶ 6; Costello Decl. ¶¶ 12-13.)  Additionally, Costello reviewed and visually inspected the items bearing the Tiffany Marks offered for sale on Defendant's Internet websites operating under the Subject Domain Names and determined the products were non-genuine Tiffany products. (Costello Decl. ¶ 14.)

As evidenced in the relevant web pages from Defendant's Internet websites operating under the Subject Domain Names, a comparison of the Tiffany Marks at issue to the marks used by Defendant in connection with the sale of Defendant's Goods reveals the obvious counterfeit infringing nature of Defendant's Goods. (Compare Tiffany's Trademark Registrations (Composite Exhibit 1, attached to the Costello Decl.) with Defendant's Websites (Composite Exhibit 1 attached to the Gaffigan Decl.).)  Defendant's Goods are being promoted, advertised, sold, and offered for sale by Defendant within this Judicial District and throughout the United

States.  (Costello Decl. ¶¶ 9-14; Holmes Decl. ¶¶ 4-6; Gaffigan Decl. ¶ 2 and Composite Exhibit 1 attached thereto, Defendant's Websites.)  Defendant is making substantial sums of money by preying upon his customers and members of the general public, many of whom have no knowledge Defendant is defrauding them through the sale of worthless counterfeit and infringing goods.  Defendant is falsely representing to consumers and the trade that his goods are genuine, non-infringing goods, and authorized and endorsed by Tiffany.  Ultimately, Defendant's Internet-based websites amount to nothing more than a massive illegal operation, infringing on the intellectual property rights of Tiffany.  The Subject Domain Names themselves are a substantial part of the means by which Defendant furthers his scheme and causes harm to Tiffany.

> **C.    Defendant Has Purposefully Falsified His Public Physical Address Data But Has Provided Valid E-mail Addresses.**

According to regulations established by the Internet Corporation for Assigned Names and Numbers ("ICANN"), an individual or entity which registers a domain name is required to provide complete and accurate registration information for the domain name. (See ICANN Uniform Domain Name Dispute Resolution Policy ¶ 2 attached as Exhibit 7 to the Gaffigan Decl.)  As demonstrated below, Defendant has ignored the applicable ICANN regulations and provided false physical address information to his domain name registrars in order to avoid liability for his criminal conduct.  However, out of necessity, Defendant has provided accurate contact e-mail addresses to all but twenty of his domain name registrars. As a practical matter, a domain registrant generally must maintain an accurate e-mail address where his registrar may communicate with him regarding issues related to the purchase, transfer, and maintenance of his domain name accounts.   Moreover, Defendant has posted contact e-mail address information on some of his websites operating under the Subject Domain Names.  It is necessary for merchants, such as Defendant, who operate entirely online, to provide customers with accurate e-mail addresses by which customers can contact the merchants to ask questions about the merchants' products, place orders from the merchants' Internet websites, and receive information from the merchants regarding the shipment of an order.

Prior to filing this action, Tiffany's counsel obtained the available WHOIS registration data for each of the Subject Domain Names identifying the address Defendant provided his registrars. (Gaffigan Decl. ¶ 3 and Composite Exhibit 2 attached thereto, WHOIS registration

records for the Subject Domain Names.)  The contact data provided by Defendant Lin for the Subject Domain Names identify his purported physical and e-mail addresses, and contact telephone numbers as follows:

| Domain Name | WHOIS Contact Address / Telephone | WHOIS Contact Email |
|---|---|---|
| 2010tiffany.com | 24 Gleneagles Road, Walsall, NULL, uk, 351122 86-783-4038895 | 2010tiffany@hotmail.com |
| bijoux-tiffany.com | Talsperrenweg 72, Ennepetal, 351122, HK, CN +86.5242652238 | admin@bijoux-tiffany.com |
| bijouxtiffanyco.com tiffanyandcopascher.com | The Landmark Central, hangkong, HK, 10012, CN +86.02321979211 | wesaleworld@hotmail.com |
| bijouxtiffanyfrance.com bracelettiffany.com francetiffany.com tiffanyandcofrance.net tiffanyzuerich.com | Centre 11-13 Shing Yip Street, hangkong, HK, 10011, CN +86.02111979211 | low2010sneakers@hotmail.com shoes2010sell@hotmail.com |
| francetiffanybijoux.com tiffanyandcofr.com tiffanybijouxfr.com tiffanyfrancebijoux.com | 3 rue de Montyon, Paris, 224123, HK, CN +86.1070123453 | francetiffanybijoux.com@hotmail.com tiffanyandcofr.com@hotmail.com tiffanybijouxfr.com@hotmail.com tiffanyfrancebijoux.com@hotmail.com |
| goodtiffanyshop.com | 242 boothferry road, Hull, NULL, uk, 56423 86-21412-2652238 | goodtiffanyshop@hotmail.co.uk |
| tiffany-bijouterie.com | 3 rue de Montyon, Paris, 224123, HK, BV +86.2151873666-4583 | tiffany-bijouterie.com@hotmail.com |
| tiffany-deutschland.com tiffany-schmuck.com | Walter Felsenstein 13, Berlin, 126872, HK, CN +86.1030123456 | tiffany-deutschland@hotmail.com tiffany-schmuck@hotmail.com |
| tiffanyandcoamsterdam.com | Topeka, KS 66607, hangkong, HK, 10010, CN +86.02711979230 | nederlandstore@hotmail.com |

| | | |
|---|---|---|
| tiffanyandcobijoux.com<br>tiffanybijouxfrance.com<br>tiffanybijouterie.com<br>tiffanygermany.com<br>tiffanyschmuckat.com<br>tiffanyschmuckch.com<br>tiffanyschmuckdeutschland.com<br>tiffanysfrance.com<br>tiffanysonlineshop.com | Greifswalder Str. 2121,<br>Berlin, 126871, HK, CN<br>+86.1040123456 | tiffanyandcobijoux@hotmail.com<br>tiffanybijouxfrance@hotmail.com<br>tiffanybijouterie@hotmail.com<br>tiffanygermany@hotmail.com<br>tiffanyschmuckat@hotmail.com<br>tiffanyschmuckch@hotmail.com<br>tiffanyschmuckdeutschland@hotmail.com<br>tiffanysfrance@hotmail.com<br>tiffanysonlineshop@hotmail.com |
| tiffanyandcobijouxfrance.com | 13 Silver Road, hangkong,<br>HK, 10010, CN<br>+86.02127979230 | admin@tiffanyandcobijouxfrance.com |
| tiffanyandcodeutschland.com | Walter Felsenstein 13,<br>Berlin, 212687, HK, CN<br>+86.1030123456 | tiffanyandcodeutschland@hotmail.com |
| tiffanyandcofrance.com | Donnersbergerstr. 36,<br>Munchen, 806342, MO, CN<br>+86.22332652238 | admin@tiffanyandcofrance.com |
| tiffanyandcoparis.net | tianjin, tianjin, 300000,<br>tianjin, CHINA<br>+1.8602231054120 | zbinsheng@yahoo.com |
| tiffanyandcopascher.net<br>tiffany-deutschland.net | 1052 beijing, 361000,<br>zhongguo, CHINA<br>+1.8613866668888 | tiffanyandcopascher@yahoo.com<br>tiffanydeutschland@yahoo.com |
| tiffanycofrance.com | Topeka, KS 66607,<br>hangkong, HK, 10012, CN<br>+86.02474232921 | cheapsell-shoes@hotmail.com |
| tiffanycoonlineshop.com<br>tiffanyschmuckonline.com | 12 Pedder Street, hangkong,<br>HK, 10011, CN<br>+86.02711979211 | good.worlds@hotmail.com |
| tiffanydeutschland.de | 68 Long Lane, Garston, L19<br>6PG, Liverpool, GB<br>+44-7768011598 | qidvn456123@yahoo.cn |
| tiffanydeutschlandde.com | 3 rue de Montyon,<br>hangkong, HK, 10011, CN<br>+86.02011979210 | buygoodsfrance@foxmail.com |
| tiffanyguenstig.com | Huntington Beach Layout,<br>hangkong, HK, 10012, CN<br>+86.02274222921 | shoeslow2010@hotmail.com |
| tiffanyschmuckonline.net | Hexie Road, Hexie Builing,<br>maoming, 525400,<br>guagndong, CHINA<br>+86.5201314 | youid198@yahoo.com |

| tiffanyoesterreich.com<br>tiffanysbijoux.com<br>tiffanysschmuck.com | 1937 Page St #4, hangkong,<br>HK, 10012, CN<br>+86.02274232921 | shoeslow@hotmail.com |
|---|---|---|
| tiffanysde.com | P.O. Box 22, Pennsylvania,<br>351122, MO, CN<br>86.5242652238 | admin@tiffanysde.com |
| tiffanysuk.com | mountainviews, California,<br>NULL, us, 523672<br>86-0524-2652238 | tiffanysuk@hotmail.com |

Plaintiff's counsel requested Holmes and Huang Yu Ting ("Ting"), a researcher in China, verify the accuracy of the physical addresses and research alternative addresses for Defendant. Ting researched all of the China-based physical contact addresses provided by Defendant for the Subject Domain Names, and determined each address to be false, incomplete, and/or invalid for service of process on Defendant. (See Declaration of Huang Yu Ting in Support of Plaintiff's *Ex Parte* Application ("Ting Decl.") ¶¶ 4-17, filed herewith, outlining Ting's investigation and the specific basis for her determination that each of the China-based physical contact addresses are false, incomplete, and/or invalid.)  Ting also attempted to contact Defendant via the China-based telephone numbers provided in the contact section of the WHOIS domain registration reports regarding the Subject Domain Names. (Ting Decl. ¶¶ 4-18.)  However, all of Ting's attempts were unsuccessful as most of the telephone numbers are either invalid or disconnected, and Ting's calls to the remaining valid telephone numbers went unanswered. (See Ting Decl. ¶¶ 4-18, outlining Ting's investigation of the telephone numbers provided in the contact section of the WHOIS domain registration reports regarding the Subject Domain Names.)

Additionally, Holmes investigated all of the purported physical contact addresses based outside of China provided by Defendant for the Subject Domain Names, and determined each to be false, incomplete, and/or invalid addresses for service of process on Defendant. (See Holmes Decl. ¶ 7, outlining Holmes' investigation and the specific basis for his determination that each of the physical contact addresses is false, incomplete, and/or invalid.)  Holmes also attempted to contact Defendant via the non-China telephone number provided in the contact section of the WHOIS domain registration report regarding the domain name tiffanydeutschland.de. (Holmes Decl. ¶ 7.)  Although Holmes' telephone call was answered, the individual stated he had no relation to "tiffany-deutschland or another online store." (Id.)

The evidence makes it abundantly clear that Defendant intentionally falsified his physical address data in violation of ICANN's rules. Moreover, after conducting diligent investigations, both Ting and Holmes were unable to identify a valid physical address for service of process on Defendant. (Ting Decl. ¶ 19; Holmes Decl. ¶ 10.) Thus, based on Defendant's provision of an invalid postal address and Tiffany's inability to find another physical address for him, Tiffany cannot serve Defendant by traditional means.

Despite falsifying his physical contact address data, Defendant provided accurate contact e-mail addresses to the domain name registrars for all but twenty of the Subject Domain Names.[2] On September 24, 2010, Holmes sent pretextual email messages to Defendant via the WHOIS contact e-mail addresses, admin@bijoux-tiffany.com, wesaleworld@hotmail.com, low2010sneakers@hotmail.com, shoes2010sell@hotmail.com, nederlandstore@hotmail.com, admin@tiffanyandcobijouxfrance.com, admin@tiffanyandcofrance.com, zbinsheng@yahoo.com, tiffanyandcopascher@yahoo.com, tiffanydeutschland@yahoo.com, cheapsell-shoes@hotmail.com, good.worlds@hotmail.com, qidvn456123@yahoo.cn, buygoodsfrance@foxmail.com, shoeslow2010@hotmail.com, youid198@yahoo.com, shoeslow@hotmail.com, and admin@tiffanysde.com. (Holmes Decl. ¶ 9 and Composite Exhibit 3 attached thereto.) The e-mails were not bounced back nor returned as "undeliverable," thereby demonstrating the e-mails were delivered and the e-mail addresses are valid and operational. (Id.) See Popular Enterprises, LLC v. Webcom Media Group, Inc., 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (finding that an e-mail sent to an e-mail address supplied by defendant to its domain name registrar did not bounce back and presumably reached defendant.) Moreover, Holmes

---

[2] Holmes also sent a pretextual e-mail to the Defendant via the WHOIS contact e-mail address 2010tiffany@hotmail.com (2010tiffany.com), francetiffanybijoux.com@hotmail.com (francetiffanybijoux.com), tiffanyandcofr.com@hotmail.com (tiffanyandcofr.com), tiffanybijouxfr.com@hotmail.com (tiffanybijouxfr.com), tiffanyfrancebijoux.com@hotmail.com (tiffanyfrancebijoux.com), goodtiffanyshop@hotmail.co.uk (goodtiffanyshop.com), tiffany-bijouterie.com@hotmail.com (tiffany-bijouterie.com), tiffany-deutschland@hotmail.com (tiffany-deutschland.com), tiffany-schmuck@hotmail.com (tiffany-schmuck.com), tiffanyandcobijoux@hotmail.com (tiffanyandcobijoux.com), tiffanybijouxfrance@hotmail.com (tiffanybijouxfrance.com), tiffanybijouterie@hotmail.com (tiffanybijouterie.com), tiffanygermany@hotmail.com (tiffanygermany.com), tiffanyschmuckat@hotmail.com (tiffanyschmuckat.com), tiffanyschmuckch@hotmail.com (tiffanyschmuckch.com), tiffanyschmuckdeutschland@hotmail.com (tiffanyschmuckdeutschland.com), tiffanysfrance@hotmail.com (tiffanysfrance.com), tiffanysonlineshop@hotmail.com (tiffanysonlineshop.com), tiffanyandcodeutschland@hotmail.com (tiffanyandcodeutschland.com), and tiffanysuk@hotmail.com (tiffanysuk.com). (Holmes Decl. ¶ 9.) However, the e-mails were returned as undeliverable. (Id.)

received verified Return Receipts for the e-mails sent to admin@bijoux-tiffany.com, wesaleworld@hotmail.com, low2010sneakers@hotmail.com, shoes2010sell@hotmail.com, nederlandstore@hotmail.com, admin@tiffanyandcobijouxfrance.com, admin@tiffanyandcofrance.com, zbinsheng@yahoo.com, tiffanyandcopascher@yahoo.com, tiffanydeutschland@yahoo.com, cheapsell-shoes@hotmail.com, good.worlds@hotmail.com, qidvn456123@yahoo.cn, buygoodsfrance@foxmail.com, shoeslow2010@hotmail.com, youid198@yahoo.com, shoeslow@hotmail.com, and admin@tiffanysde.com, thereby conclusively demonstrating the e-mails were delivered to the recipient and verifying the reliability of each e-mail address. (Id.)

### D.   Defendant Relies Solely on Electronic Communications.

Defendant has structured his websites so that the sole means for customers to purchase his goods is by placing an order over the Internet.  Defendant takes and processes orders and provides shipping and billing information, payment, and confirmation of orders solely through his websites.  (Holmes Decl. ¶¶ 4-5 and Composite Exhibits 1-2 attached thereto.)  Furthermore, Defendant instructs customers to contact him via e-mail with any questions or concerns. (Id.; see also Defendant's Websites attached as Composite Exhibit 1 to the Gaffigan Decl.)  Indeed, the "Contact Us" section on each of the websites operating under the Subject Domain Names list only e-mail addresses and no other valid means to contact Defendant.  (See Defendant's Websites attached as Composite Exhibit 1 to the Gaffigan Decl.)  Accordingly, Defendant does not provide any valid physical addresses or operational phone numbers where customers can contact him or locate his business.

Additionally, as noted above, Holmes made a covert purchase of a Tiffany branded Heart Tag key ring from Defendant via one of his websites, tiffanyandcofrance.net. (Holmes Decl. ¶ 4-6 and Composite Exhibits 1-2 attached thereto.)  Holmes' purchase was processed entirely online, which included providing shipping and billing information, payment, and confirmation of his order. (Id. at ¶ 4.)

III.     **ARGUMENT**

   A.     **An *Ex Parte* Temporary Restraining Order is Essential to Prevent Immediate Injury to Plaintiff.**

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." As demonstrated herein, such irreparable and immediate injury will result to Tiffany if Defendant's wrongful activities are not immediately stopped by the issuance of a temporary restraining order.

Defendant herein fraudulently promotes, advertises, sells, and offers for sale substantial quantities of goods bearing counterfeits and infringements of the Tiffany Marks via Internet websites operating under the Subject Domain Names. Moreover, many of the Subject Domain Names incorporate at least one of the Tiffany Marks. By his actions, Defendant is creating a false association in the minds of consumers between Defendant and Tiffany. Thus, a temporary restraining order is necessary. In re Vuitton et Fils, S.A., 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

With every passing day, Tiffany is suffering greater harm to its reputation and consumers are being defrauded out of more and more money. Specifically, Defendant is wrongfully using the Tiffany Marks to promote and attract customers to his website businesses. In short, the Tiffany Marks are being used by Defendant to increase traffic to his illegal businesses which offer consumers a variety of goods under counterfeits and infringements of Tiffany's Marks. Moreover, if notice is given of Plaintiff's intent to seek injunctive relief, Defendant can easily and quickly modify the registration and website content data related to the Subject Domain Names and transfer the entire value of the websites through redirects, thereby thwarting Plaintiff's ability to obtain meaningful relief under the Lanham Act. Plaintiff's concern in this regard is particularly appropriate in this case given Defendant's efforts to conceal his true identities by providing false contact information when registering his domain names. The entry of a temporary restraining order would serve to immediately stop Defendant from benefiting

from his wrongful use of the Tiffany Marks and preserve the status quo until such time as a hearing can be held.

1. **Standard for Temporary Restraining Order and Preliminary Injunction.**

In this Circuit, the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same.  See Siefel v. Lepore, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) aff'd 2000 WL 1781946 (11th Cir. 2000).  In order to obtain a temporary restraining order or a preliminary injunction, Plaintiff must establish that: (1) there is a likelihood that Plaintiff will succeed on the merits at the trial of this action; (2) Plaintiff will suffer irreparable injury if Defendant is not enjoined; (3) the injury to Plaintiff outweighs the threatened harm an injunction would cause to Defendant; and (4) the injunction would not disserve the public interest.  See Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets); see also, E. Martin & Co. v. Shaw-Ross Int'l Exports, 756 F.2d 1525, 1530 n. 13 (11th Cir. 1985).  As will be demonstrated below, Tiffany's evidence satisfies the Levi Strauss test and, accordingly, injunctive relief is appropriate and necessary.

2. **Probability of Success on the Merits of Tiffany's Claims.**

Tiffany's Complaint charges Defendant with federal trademark counterfeiting and infringement under 15 U.S.C. § 1114; false designation of origin under 15 U.S.C. §1125(a); and cyberpiracy under 15 U.S.C. §1125(d).  Tiffany has a substantial likelihood of success on the merits of all of these claims.

a) **Tiffany Will Likely Succeed on its Counterfeiting and Infringement Claim.**

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive."  Tiffany must demonstrate (1) ownership of the marks at issue; (2) Defendant's use of the marks is without authorization from Tiffany; and (3) Defendant's use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendant's Goods.  See Babbit Electronics, Inc. v. Dynascan Corp., 38 F.3d 1161, 1178 (11th Cir. 1994);

Dieter v. B&H Industries of Southwest Florida, 880 F.2d 322, 326 (11th Cir. 1989), cert. denied, 498 U.S. 950 (1990).  Tiffany's evidence submitted herewith satisfies the three requirements of 15 U.S.C. § 1114.

The first two elements of Tiffany's trademark infringement claim are easily met.  The Tiffany Marks are federally registered and almost all have become "incontestable" under 15 U.S.C. §§ 1058 and 1065.  (Costello Decl. ¶ 4 and Composite Exhibit 1 attached thereto, Tiffany's Trademark Registrations.)  Tiffany is the owner and/or exclusive licensee of the Tiffany Marks, which are registered, valid, and thus protectable marks.  (Id.)  See also 15 U.S.C. § 1057(b); Ocean Bio-Chem, Inc. v. Turner Network Television, Inc., 741 F.Supp. 1546, 1554 (S.D. Fla. 1990) ("Incontestable status provides conclusive evidence of the registrant's exclusive right to use the registered mark, subject to §§ 15 and 33(b) of the Lanham Act.").  Moreover, Defendant does not have, nor has he ever had, the right or authority to use the Tiffany Marks on Defendant's Goods.  (Costello Decl. ¶ 9.)

The Eleventh Circuit uses a seven-factor test in determining the third element, likelihood of confusion.  See Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1506 (11th Cir. 1985).  These factors, as outlined in Safeway Store, Inc. v. Safeway Discount Drugs, Inc., are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendant's intent; and (7) evidence of actual confusion.  See 675 F.2d 1160, 1164 (11th Cir. 1982); see also Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1303 (11th Cir. 1997).  The seven factors listed are to be weighed and balanced and no single factor is dispositive.  As will be demonstrated below, the overwhelming majority of the factors weigh heavily in favor of Tiffany.

### (1)     Strength of the Marks.

The spectrum of protectability and strength for trademarks is divided into four primary types of designations: (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic.  See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992).  Arbitrary or fanciful marks are the strongest.  Moreover, arbitrary/fanciful and suggestive marks are deemed inherently distinctive and entitled to protection.  (Id.)  A trademark's strength is determined by viewing the mark in its entirety as it appears in the marketplace.  See Lone Star Steakhouse and Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355,

14

362 (11th Cir. 1997).  It cannot be seriously disputed that the Tiffany Marks are strong, arbitrary and fanciful marks.  (See Tiffany Trademark Registrations attached as Composite Exhibit 1 to the Costello Decl.)

The Tiffany Marks are completely arbitrary and, therefore, inherently distinctive.  In addition to their inherent strength, the Tiffany Marks have also acquired secondary meaning.  Tiffany has expended substantial time, labor, skill, and expense in developing, advertising, and promoting the Tiffany Marks.  (Costello Decl. ¶¶ 6-7.)  The Tiffany Marks enjoy widespread recognition and are prominent in the minds of the consuming public for jewelry items and accessories.  (Costello Decl. ¶ 7.)  Indeed, Tiffany's products bearing the Tiffany Marks are among the best selling jewelry, items and accessories in the United States.  (Costello Decl. ¶ 6.)  Moreover, Tiffany has incontestable registrations for each of the Tiffany Marks at issue.  Such incontestability gives those marks a presumption of strength.  See Dieter v. B&H Indus. of Southwest Fla., 880 F.2d 322, 329 (11th Cir. 1989).

### (2)      Similarity of the Marks and Goods.

Likelihood of confusion is greater when an infringer uses the exact trademark.  Turner Greenberg Assocs. v. C & C Imps., 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004).  Defendant is using marks which are clearly identical to the Tiffany Marks.  (Compare Tiffany Trademark Registrations, Composite Exhibit 1 attached to the Costello Decl., and Defendant's Websites, Composite Exhibit 1 attached to the Gaffigan Decl.)  Furthermore, "[t]he greater the similarity between the products and services, the greater the likelihood of confusion."  John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 976 (11th Cir. 1983).  To the average consumer, Defendant's Goods appear to be substantially similar, if not identical, to Tiffany's genuine products.  This similarity is true in appearance only since Defendant's Goods are different in terms of quality and not backed up by a substantial company such as Tiffany.  (Costello Decl. ¶¶ 6-7, 13.)  In view of the foregoing, these factors weigh heavily in favor of Tiffany.

### (3)      Similarity of Sales Method and Advertising Method.

The likelihood of confusion is increased when the sales methods of Plaintiff and the Defendant are identical.  See Turner Greenburg Assocs., 320 F. Supp. 2d at 1332.  Both Tiffany and Defendant sell, distribute and advertise their products using at least one of the same marketing channels, the Internet, in the same geographical distribution areas, including the

United States. (Costello Decl. ¶ 6; Holmes Decl. ¶ 4; see also, Defendant's Websites attached as Composite Exhibit 1 to the Gaffigan Decl.)  Thus the conditions of purchase for both parties are unmistakably identical.  Moreover, both target the same general customers, and as such, Tiffany is directly competing with Defendant's products.  Accordingly, these factors weigh in favor of finding that a likelihood of confusion exists.

### (4)    Defendant's Intent in Selecting the Marks.

In this District, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'"  Turner Greenberg Assocs., 320 F. Supp. 2d at 1333, citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp.2d 1261, 1268 (S.D. Fla. 1999); Rolex Watch U.S.A., Inc. v. Canner, 645 F. Supp. 484, 492 (S.D. Fla. 1986).  In a case of clear-cut copying such as this, it is appropriate to infer Defendant intended to benefit from Tiffany's reputation, to the detriment of Tiffany.  See Playboy Enterprises, Inc. v. P.K. Sorren Export Co. Inc. of Florida, 546 F.Supp. 987, 995-996 (S.D. Fla. 1982).  Defendant obviously adopted the Tiffany Marks with the intention of reaping the benefits of Tiffany's world-renown reputation for making high caliber goods.  Defendant even misappropriates the Tiffany Marks in his packaging.  In fact, Defendant states on his websites that purchases come with a Tiffany branded gift bag and box.  (See Composite Exhibit 1 attached to the Holmes Decl.; and Defendant's Websites attached as Composite Exhibit 1 to the Gaffigan Decl.)  At a bare minimum, Defendant acted with willful blindness or with reckless disregard for Tiffany's trademark rights.  See Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1476 (11th Cir. 1991) (accepting willful blindness may provide the requisite intent).  Defendant cannot seriously contend that he did not intend to reap the benefits of Tiffany's world-famous reputation for the purpose of defrauding the public.  Accordingly, this factor heavily weighs in Tiffany's favor.

### (5)    Evidence of Actual Confusion.

It should be noted that actual confusion is unnecessary to establish infringement since the test is likelihood of confusion.  See Frehling Enters. v. Int'l Select Group, Inc., 192 F.3d 1330, 1340 (11th Cir. 1999).  In this case, however, it is reasonable to infer actual confusion exists in the marketplace based upon the circumstantial evidence available.  Defendant is offering to sell

16

and selling counterfeit Tiffany branded goods identical in appearance to those sold by Tiffany. (Costello Decl. ¶¶ 11-14; Holmes Decl. ¶ 5 and Composite Exhibit 2 attached thereto; and Defendant's Websites attached as Composite Exhibit 1 to the Gaffigan Decl.)  Even if buyers are told of the bogus nature of Defendant's Goods, other consumers viewing Defendant's Goods in a post-sale setting will obviously be confused, because they are viewing goods bearing the Tiffany Marks and are under the impression they are viewing genuine goods sold or authorized by Tiffany.  Post-sale consumer confusion is ensured by Defendant's exact copying of the Tiffany Marks.  Such post-sale confusion is entirely actionable.  See Remcraft Lighting Products, Inc. v. Maxim Lighting, Inc., 706 F. Supp. 855, 859 (S.D. Fla. 1989) ("The likelihood of confusion need not occur at wholesale level when the end user will be confused."); Rolex Watch U.S.A., Inc. v. Forrester, 2 U.S.P.Q.2d 1292, 1986 WL 15668, at *4 (S.D. Fla. Dec. 9, 1986), ("it is clear that the Court need not find actual confusion on the part of the actual purchasers of [defendant's] products.  The proper test is "likelihood of confusion," and the likely confusion may be on the part of observers, [...] or second-hand purchasers.").

In view of the foregoing analysis, it is abundantly clear that the seven (7) factors weigh overwhelmingly in Tiffany's favor, and Tiffany has, therefore, shown a probability of success on the merits of its trademark counterfeiting and infringement claim.

**b)**     **Tiffany Is Likely to Succeed on Its False Designation of Origin Claim.**

As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue.  See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992).  Whether the violation is called infringement, unfair competition or false designation of origin, the test is identical -- is there a "likelihood of confusion?"  (See Id.; see also Bonito Boats, Inc., 489 U.S. 141, 157 (1989) ("The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting consumers from confusion as to source.").  Therefore, because Tiffany has established the merits of its trademark counterfeiting and infringement claims against Defendant, a likelihood of success is also shown as to Tiffany's federal false designation of origin claim pursuant to Section 43(a) of the Lanham Act.

c)        **Tiffany is Likely to Succeed on its Cyberpiracy Claim.**

The Anticybersquatting Consumer Protect Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name which is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. 15 U.S.C. § 1125(d).  To prevail under 15 U.S.C. § 1125(d), Plaintiff must prove that "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit."  Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 Fed.Appx. 252, 256, 2006 WL 2847233, 3 (11th Cir. 2006).  Tiffany's evidence submitted herewith satisfies the three requirements of 15 U.S.C. § 1125(d).

Defendant has registered all forty-five Subject Domain Names, which are identical, confusingly similar to and/or dilutive of at least one of the Tiffany Marks at issue.  The domain names incorporate the "Tiffany" Mark in its entirety surrounded by descriptive or generic terms, rendering the names nearly identical as compared to Tiffany's trademark. See DaimlerChrysler v. The Net Inc., 388 F.3d 201, 205-206 (6th Cir. 2004) ("Courts generally have held that a domain name that incorporates a trademark is 'confusingly similar to' that mark if 'consumers might think that [the domain name] is used, approved, or permitted' by the mark holder."); Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc., 161 F. Supp.2d 1339, 1351 (S.D. Fla. 2001) ("taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion among Internet users as a matter of law".). Moreover, Courts have found that slight differences between domain names and registered marks, such as the addition of minor or generic words to the disputed domain names are irrelevant. See Ford Motor Co. v. Greatdomains.Com, Inc., 177 F.Supp.2d 635, 642 (E.D. Mich. 2001) (holding "unless words or letters added to the plaintiff's mark within the domain name clearly distinguish it from the plaintiff's usage, allegations that a domain name incorporates a protected mark generally will suffice"); Harrods Ltd. v. Sixty Internet Domain Names, 157 F.Supp.2d 658, 677 (E.D. Va.2001), aff'd in part, rev'd in part, 302 F.3d 214 (4th Cir. 2002) (finding domain names adding descriptive or generic terms like "shipping" and "store" to the "Harrods" mark confusingly similar). Furthermore, it is indisputable the Tiffany Marks are famous and distinctive and enjoy widespread recognition and are prominent in the minds of the

consuming public. (Costello Decl. ¶¶ 6-7.)  Tiffany's genuine goods are among the best selling high quality luxury items in the world and the Tiffany Marks enjoy widespread recognition and are prominent in the minds of the consuming public. (Costello Decl. ¶¶ 6-7.)

As to the issue of bad faith, the ACPA lists nine factors for Courts to consider in determining whether a domain name has been registered or used in "bad faith" with an intent to profit from a mark in registering or using the mark in a domain name.  See 15 U.S.C. § 1125(d)(1)(B)(i); Victoria's Cyber Secret Ltd. P'ship, 161 F. Supp.2d at 1351. The nine factors are not meant to be exclusive and the Court may consider all relevant factors in making a determination of bad faith. Id. at 1347.  Each factor addresses whether "the defendant's use of the disputed domain name is legitimate – i.e., for some purpose other than simply to profit from the value of the trademark." Ford Motor Co., 177 F.Supp.2d at 642.  An examination of the relevant bad faith factors compels the conclusion that Defendant's registration and use of the forty-five domain names at issue violates 15 U.S.C. § 1125(d).

The first three factors, 15 U.S.C. § 1125(d)(1)(B)(I)-(III), are clearly present inasmuch as Defendant has no rights in any of the Tiffany Marks, the forty-five domain names at issue bear no relation to Defendant's name, and Defendant has never used those Marks in connection with a bona fide, that is, non-infringing, offering of goods or services.  Specifically, Tiffany is the owner of the Tiffany Marks at issue, and Defendant has no authorization or right to use the Marks nor has he had prior use of the Subject Domain Name in connection with the bona fide offering of any goods or services.  (Costello Decl. ¶ 9.)  Moreover, Tiffany has used the relevant Tiffany Marks in commerce since before Internet domain names existed.  (See e.g. Costello Decl. ¶ 4.)

Additionally, as discussed above, Defendant has clearly intentionally incorporated the Tiffany Mark in his domain names to divert consumers looking for Tiffany's website to his own websites for commercial gain.  Such consumers are likely to be confused as to the source and sponsorship of Defendant's websites and mistakenly believe the websites are endorsed by and/or affiliated with Tiffany.  This is especially true in light of the fact Defendant's websites are offering for sale goods bearing counterfeits and infringements of the Tiffany Marks. (Costello Decl. ¶¶ 13-14; Holmes Decl. ¶¶ 4-6; and Defendant's Websites attached as Composite Exhibit 1 to the Gaffigan Decl.)  Clearly, Defendant's use is anything but a bona fide noncommercial or fair use of the Tiffany trademarks.  In fact, Defendant's registration of the forty-five domain

names at issue in order to sell and offer for sale counterfeit Tiffany branded goods, knowing the domain names were identical or confusingly similar to Tiffany's indisputably famous and distinctive trademarks ensured a likelihood of confusion among consumers. See e.g. House Judiciary Committee Report on H.R. 3028, H.R. Rep. No. 106-412 p. 13 (October 25, 1999) ("The more distinctive or famous a mark has become, the more likely the owner of that mark is deserving of the relief available under this act."). Thus, the fourth, fifth, and ninth statutory factors, 15 U.S.C. § 1125(d)(1)(B)(IV), (V), and (IX), also weigh in favor of finding Defendant registered the domain names with the bad faith intent to profit from the Tiffany trademarks.

Finally, Defendant's failure to list or maintain accurate contact information in the registration data for the domain names and Defendant's registration of multiple domain names which are identical or confusingly similar to the Tiffany Mark are also indicative of bad faith. Specifically, the physical contact addresses listed in the registration data for the domain names at issue were investigated by Tiffany and determined to be invalid addresses. (Holmes Decl. ¶ 7; Ting Decl. ¶¶ 4-17.) Thus the seventh and eighth statutory factors, 15 U.S.C. § 1125(d)(1)(B)(VII) and (VIII), weigh in favor of finding Defendant registered the domain names at issue in bad faith. In view of the foregoing analysis, it is abundantly clear that Defendant registered the forty-five domain names at issue with the bad faith intent to profit from Tiffany's trademark.

### 3. Tiffany is Suffering Irreparable Injury.

As the Eleventh Circuit expressed it: "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." Ferrellgas Ptnrs., L.P. v. Barrow, 143 Fed. Appx., 180, 191 (11th Cir. 2005) (citing McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998). Such a finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where Plaintiff has demonstrated it will lose control of its reputation as a result of Defendant's activities. Id. at 90; see also McDonald's Corp., 147 F.3d at 1310.

As demonstrated above, a likelihood of consumer confusion exists herein, because Defendant is engaged in continuous counterfeiting activities (1) using spurious designations, which are substantially indistinguishable from the Tiffany Marks and (2) using false statements

regarding Tiffany's relationship to Defendant's businesses.  Thus, Tiffany continues to suffer irreparable injury to its reputation and goodwill for as long as Defendant is allowed to continue his counterfeiting, infringing, false association, and cyberpiracy activities.  (Costello Decl. ¶ 15.)

### 4.     The Balance of Hardship Tips Sharply in Tiffany's Favor.

Tiffany has expended substantial time, money and other resources to develop the quality, reputation and goodwill associated with the Tiffany Marks and the genuine goods bearing the Tiffany Marks.  (Costello Decl. ¶¶ 6-7.)  Tiffany has already suffered unquantifiable damage to its reputation.  Should Defendant be permitted to continue his trade in counterfeit goods, using Tiffany's name and trademarks, Tiffany will continue to suffer substantial loss and damage to its reputation.  To the contrary, Defendant will suffer no legitimate hardship in the event a temporary restraining order and a preliminary injunction are issued.  Defendant has no legal or equitable right to engage in his present counterfeiting, infringing, false association, and cyberpiracy activities.  Therefore, the balance of hardship tips sharply in Tiffany's favor.

### 5.     The Relief Sought Serves the Public Interest.

The issuance of a temporary restraining order and preliminary injunction is in the best interest of the general public.  Defendant is engaging in criminal activities and is directly defrauding the consuming public by palming off his goods as genuine goods of Tiffany.  Moreover, Defendant is falsely identifying Tiffany as the origin of such goods.  The public has an interest in not being misled as to the origin, source or sponsorship of trademarked products.  See e.g. Nike, Inc. v. Leslie, 227 U.S.P.Q. 574, 575 (M.D. Fla. 1985); see also Phillip Morris USA Inc. v. Shalabi, 352 F.Supp.2d 1067, 1075 (C.D. Cal. 2004) citing Inwood Labs., Inc. v. Ives Labs. Inc., 456 U.S. 844, 854 n.14, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) ("It is well established that trademark law protects not only the private interests of the trademark owner but also the public's interest in not being confused by the infringing products.").

### 6.     The Equitable Relief Sought Should Issue.

This Court has specific authority to order injunctive relief under the federal statutes upon which this action is brought.  The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to

prevent the violation of any right of the registrant of a mark …" 15 U.S.C. § 1116(a); <u>see also</u> 17 U.S.C. §§ 502 and 504(b).

**a)      Entry of a Temporary Restraining Order Immediately Enjoining Defendant's Unauthorized and Illegal Use of the Tiffany Marks is Appropriate.**

Tiffany requests an order requiring Defendant immediately cease all use of the Tiffany Marks, or substantially similar marks, including on or in connection with all Internet websites and domain names owned and operated, or controlled by him. Such relief is necessary to stop the ongoing harm to Tiffany's Marks and goodwill and to prevent Defendant from continuing to benefit from the increased traffic to his illegal website operations created by his illegal use of the Tiffany Marks.  Many courts have authorized immediate injunctive relief in cases involving the unauthorized use of trademarks. <u>See</u> <u>e.g.</u> <u>Chanel, Inc. v. Zhixian</u>, Case No. 10-cv-60585-JIC (S.D. Fla. May 5, 2010) (granting similar relief sought herein); <u>Gucci America, Inc. v. Does 1-10</u>, Case No. 10-cv-60328-JAL (S.D. Fla. March 22, 2010) (same); <u>Gaffigan v. Does 1-10</u>, Case No. 09-cv-61206-JAL (S.D. Fla. Sept. 11, 2009) (same); <u>see also</u> <u>Kraft Foods Holdings, Inc. v. Helm</u>, 205 F.Supp. 2d 942, 956 (N.D. Ill. 2002) (granting preliminary injunction requiring defendant "immediately" to remove all references to version of plaintiffs mark, including removing all references "from any metatags, metanames, or any other keywords" on his websites); <u>Ford Motor Company v. Lapertosa</u>, 126 F. Supp. 2d 463 (E.D. Mich. 2001) (defendant enjoined from "using in any way the Internet domain name fordrecalls.com").

**b)      Entry of an Order Prohibiting Transfer of the Subject Domain Names During the Pendency of this Action is Appropriate.**

To preserve the status quo during the pendency of this litigation, Tiffany seeks an order prohibiting Defendant from transferring the Subject Domain Names to other parties. Under the operating rules of domain name Registrars, registrants can easily transfer ownership of domain names. (Gaffigan Decl. ¶ 9.)  Defendants involved in litigation easily can, and often will, change the ownership of a domain name and thereby frustrate the court's ability to provide relief to the plaintiff. (<u>Id.</u>)  Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant such relief. <u>See</u>, <u>e.g.</u>, <u>Chanel, Inc. v. Zhixian</u>, Case No. 10-cv-60585-JIC (S.D. Fla. May 5, 2010) (prohibiting Defendants from transferring domain names during pendency of until further Order

of the Court"); <u>Gucci America, Inc. v. Does 1-10</u>, Case No. 10-cv-60328-JAL (S.D. Fla. March 22, 2010) (same); <u>Gaffigan v. Does 1-10</u>, Case No. 09-cv-61206-JAL (S.D. Fla. Sept. 11, 2009) (same); <u>Iconix v. Tokuda</u>, 457 F. Supp. 2d 969 (N.D. Cal. 2006) (prohibiting Defendants "from using, selling, licensing, or transferring the domain name"); <u>Ford Motor Company v. Lapertosa</u>, 126 F. Supp. 2d at 467-68.  Here, an interim order prohibiting Defendant from transferring the Subject Domain Names poses no burden on him, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Tiffany full relief.

Because domain name Registrars exercise effective control over whether domain names can be transferred, the Lanham Act explicitly provides for Registrars to deposit domain name certificates with the court, thereby recognizing the court's control over use of the domain names. <u>See</u> 15 U.S.C. § 1114(2)(D); 15 U.S.C. § 1125(d)(2)(C); <u>Philip Morris USA, Inc. v. Otamedia Ltd.</u>, 331 F. Supp. 2d 228, 230 (S.D.N.Y. 2004) (affirming registrar's decision to deposit certificate with court where registrant used web site to make infringing sales); <u>see</u> <u>also</u> <u>Toys "R" Us, Inc. v. Akkaoui</u>, 1996 WL 772709 (October 29, 1996 N.D. Cal.) (noting that registrar, by delivering certificate to the Court, had "delegated complete control regarding the disposition of the registration and use of the domain name").  By this mechanism, the parties, and this Court, are assured that the ownership of the domain names will not change while the action is proceeding.  Accordingly, Tiffany also seeks an interim order requiring Defendant to instruct his domain name Registrars for the Subject Domain Names to deposit domain name certificates with the Court.

### c) Entry of an Order Redirecting and Disabling the Subject Domain Names is Appropriate.

In domain name trademark cases, courts recognize that an interim order redirecting, transferring, disabling, or canceling the offending domain names often may be the only means of affording plaintiff interim relief that avoids irreparable harm. <u>See</u> <u>e.g.</u>, <u>Chanel, Inc. v. Zhixian</u>, Case No. 10-cv-60585-JIC (S.D. Fla. May 5, 2010) (granting identical relief sought herein: ordering that the registrars set the domain names to redirect to plaintiff's publication website and thereafter placing domain names on lock status, preventing the modification or deletion of the domains by the registrars or the defendants); <u>Gucci America, Inc. v. Does 1-10</u>, Case No. 10-cv-60328-JAL (S.D. Fla. March 22, 2010) (granting temporary restraining order and disabling domain names at issue); <u>Gaffigan v. Does 1-10</u>, Case No. 09-cv-61206-JAL (S.D. Fla. Sept. 11,

2009) (granting temporary restraining order and disabling domain names at issue); see also Board of Directors of Sapphire Bay Condominiums West v. Simpson, 77 U.S.P.Q.2d (BNA) 1629, 129 Fed. Appx. 711 (3rd Cir. 2005) (affirming District Court's grant of the preliminary injunction ordering defendant to "cancel his registration of the domain name and refrain from using the name, or any derivative thereof, for any Web site under his ownership or substantial control"); Ford Motor Company v. Lapertosa, 126 F. Supp. 2d at 468 (preliminary injunction issued ordering the transfer of the domain name at issue to plaintiff pending resolution on the merits); Chanel, Inc. v Paley, Case No. 09-cv-04979-MHP (N.D. Cal. Oct. 26, 2009) (granting temporary restraining order and disabling domain names at issue).  Accordingly, Tiffany respectfully requests the Court order the Defendant and his Registrars for the Subject Domain Names to set the Subject Domain Names to automatically redirect to a website created by Tiffany appearing at the Uniform Resource Locator ("URL") http://servingnotice.com/lin2/index.html, whereon a copy of all subsequent pleadings, documents and orders issued in this action will be displayed by Plaintiff. Upon such redirection, a copy of all of the pleadings, other documents and Court orders issued in this matter will be immediately visible to the Defendant the moment he types any of his own domain names into his web browser.  Tiffany's requested relief will (1) preclude the associated websites from resolving and thereby displaying the Defendant's counterfeit goods, and (2) provide further notice to Defendant of the pendency of this action and afford him and any other interested parties with an opportunity to present objections.

 With respect to the Subject Domain Names, 2010tiffany.com, goodtiffanyshop.com, and tiffanysuk.com for which Xin Net Technology Corporation in China is the Registrar, and bijoux-tiffany.com, francetiffanybijoux.com, tiffanyandcofr.com, tiffanybijouxfr.com, tiffanyfrancebijoux.com, tiffany-bijouterie.com, tiffany-deutschland.com, tiffany-schmuck.com, tiffanyandcobijoux.com, tiffanybijouxfrance.com, tiffanybijouterie.com, tiffanygermany.com, tiffanyschmuckat.com, tiffanyschmuckch.com, tiffanyschmuckdeutschland.com, tiffanysfrance.com, tiffanysonlineshop.com, tiffanyandcodeutschland.com, tiffanyandcofrance.com, and tiffanysde.com for which Beijing Innovative Linkage Technology Ltd. dba Dns.com.cn in China is the Registrar, and bijouxtiffanyco.com, tiffanyandcopascher.com, bijouxtiffanyfrance.com, bracelettiffany.com, francetiffany.com, tiffanyandcofrance.net, tiffanyzuerich.com, tiffanyandcoamsterdam.com,

tiffanyandcobijouxfrance.com, tiffanycofrance.com, tiffanycoonlineshop.com, tiffanyschmuckonline.com, tiffanydeutschlandde.com, tiffanyguenstig.com, tiffanyoesterreich.com, tiffanysbijoux.com, and tiffanysschmuck.com for which Hichina Zhicheng Technology Ltd. in China is the Registrar, and tiffany-deutschland.net, tiffanyandcoparis.net, tiffanyandcopascher.net, and tiffanyschmuckonline.net for which Melbourne IT, LTD. D/B/A Internet Names Worldwide in Australia is the Registrar, and tiffanydeutschland.de for which DENIC eG in Germany is the Registrar, Tiffany has no reasonable expectation that those Registrars will comply with an Order of this Court regarding the redirection of those Subject Domain Names. (Gaffigan Decl. ¶ 11.)

Accordingly, in order to gain control of, disable, and redirect the Subject Domain Names, Tiffany requests the Court enter an order requiring the Registries which maintain the Top Level Domain ("TLD") Zone files for the Subject Domain Names change the registrar of record for the Subject Domain Names to the United States based Registrar GoDaddy.com, Inc., where they will be held in trust for the Court during the pendency of this action and set to automatically redirect to http://servingnotice.com/lin2/index.html.[3]  Upon such redirection, a copy of all of the pleadings, other documents and Court orders issued in this matter will be immediately visible to Defendant the moment he types any of his own domain names into his web browsers. The Subject Domain Names would remain in the legal ownership of Defendant, but they would no longer be able to display the infringing and counterfeit website content at issue in this matter. Rather, they would serve as the single most effective means of notifying Defendant of the pendency of this action and the relief sought by Tiffany and affording him and any other interested parties with an opportunity to present objections.

---

[3] In some of the cases cited for redirection of the domain names to plaintiff's publication website, the redirection was accomplished by ordering the Registrars to modify Domain Name System ("DNS") data. However, based upon a multitude of past cases, Tiffany is aware that the China-based Registrars for the Subject Domain Names will not comply with an Order of this Court regarding the redirection of those Subject Domain Names. Accordingly, to accomplish the same purpose, Tiffany is seeking a charge of the registrars of record for the Subject Domain Names to Godaddy, Inc., a United States based Registrar which regularly voluntarily complies with orders to modify the DNS data redirecting the domain names. Such relief was recently granted in Chanel, Inc. v. Liu Ling, Case No. 2:10-cv-00489-MSD-DEM (E.D. Virginia October 7, 2010); Chanel, Inc. v. Cai, Case 2:10-cv-02639-BBD-dkv (W.D. Tenn. September 4, 2010); Louis Vuitton Malletier, S.A. v. Key Lin, Case 10-cv-61640-PCH (S.D. Fla. September 8, 2010); and Chanel, Inc. v. Liu Zhixian, Case 0:10-cv-60585-JIC (S.D. Fla. April 21, 2010).

**B.     An Order Authorizing Alternate Service of Process on Defendant Is Appropriate.**

Pursuant to Federal Rule of Civil Procedure 4(f)(3), a district court may order an alternate method for service to be effected upon a foreign defendant, provided that it is not prohibited by international agreement and is reasonably calculated to give notice to the defendant.  In the instant matter, alternate service of process via e-mail and publication is appropriate given that Defendant has established extensive Internet-based businesses in which he relies solely on electronic communications for their operation and because of Defendant's decision to conceal his physical location.  Accordingly, this Court should permit service on Defendant by e-mail and publication.

**1.     The Court may Authorize Service via Electronic Mail and Publication.**

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process to be made on an individual in a foreign country by any means not prohibited by international agreement as the Court directs.  Prewitt Enterprises, Inc. v. The Organization of Petroleum Exporting Countries, 353 F.3d 916, 923 (11th Cir. 2003); Rio Props. Inc., v. Rio Int'l Interlink, 284 F.3d 1007, 1014 (9th Cir. 2002).  The plain language of Rule 4(f)(3) reflects that the decision to issue an order allowing an alternate means of service lies within the sole discretion of the District Court.  See Prewitt Enterprises, 353 F.3d at 921; Rio Props., 284 F.3d at 1116.  See e.g., In re Int'l Telemedia Associates, 245 B.R. 713, 720 (N.D. Ga. 2000) (noting that Rule 4(f)(3) is designed to allow courts discretion and broad flexibility to tailor the methods of service for a particular case).  Rule 4 does not require that a party attempt service of process by those methods enumerated in Rule 4(f)(2), including by diplomatic channels and letters rogatory, before petitioning the court for alternative relief under Rule 4(f)(3). Rio Props., 284 F.3d at 1114-15; see also Brookshire Brothers, Ltd. v. Chiquita Brands International, 05-CIV-21962, 2007 WL 1577771, at *1 (S.D. Fla. 2007).  In Brookshire, this Court allowed substitute service on a party's attorney pursuant to Rule 4 (f)(3) holding as follows:

> Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f) and each subsection is separated from the one previous merely by the simple conjunction 'or.' Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates the primacy, and certainly Rule

4(f)(3) indicates no qualifiers or limitations which indicate its availability only after attempting service of process by other means.

Brookshire, 2007 WL 1577771, at *2.  Judge Cooke went on to hold that, "[t]he invocation of Rule 4(f)(3), therefore, is neither a last resort nor extraordinary relief." (citing Rio Props., 284 F.3d at 1015.)

Additionally, the method of service of process "must also comport with constitutional notions of due process." Rio Props., 284 F.3d at 1016; see also Prewitt Enterprises, 353 F.3d at 927.  "To meet this requirement, the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present his objections.'" Rio Props., 284 F.3d at 1016 (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950.)  The Ninth Circuit in Rio Props. held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." Rio Props., 284 F.3d at 1017.  See also In re Int'l Telemedia Associates, 245 B.R. at 722 (stating that service of process by electronic mail "comports fully with the constitutional standards of due process").  The Court concluded "not only that service of process by e-mail was proper—that is, reasonably calculated to apprise [the defendant] of the pendency of the action and afford it an opportunity to respond—but in this case, it was the method of service most likely to reach [the defendant]." Rio Props., 284 F.3d at 1017.  The Court reached this conclusion in part because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail.  See, e.g., In re Int'l Telemedia Associates, 245 B.R. at 721 ("If any methods of communication can be reasonable calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them.")

Here, service on Defendant by e-mail will satisfy due process by apprising him of the action and giving him the opportunity to answer Tiffany's claims.  As set forth in the Declarations of Huang Yu Ting and Jason Holmes, Defendant has secreted his physical location in a manner that violates the terms of his ICANN domain registration agreement and prohibits Tiffany from physically serving process on him.  In fact, the only way for Tiffany to provide Defendant with notice of this action is through his e-mail addresses, which Tiffany has recently verified as the sole reliable means of communicating with Defendant. (Holmes Decl.¶ 9 and

Composite Exhibit 3, attached thereto.)  E-mail service on an online business defendant is appropriate and constitutionally acceptable in a case such as this when the plaintiff is unable to personally serve the defendant at a physical address and has proven that e-mail is the most effective means of providing the defendant notice of the action.  See Rio Properties, 284 F.3d at 1017 (concluding "not only that service of process by e-mail was proper—that is, reasonably calculated to apprise [the defendant] of the pendency of the action and afford it an opportunity to respond—but in this case, it was the method of service most likely to reach [the defendant]."); see also Popular Enterprises, 225 F.R.D. at 562 ("Under the facts and circumstances presented here, Rule 4(f)(3) clearly authorizes the court to direct service upon defendant by e-mail.  The rule is expressly designed to provide courts with broad flexibility in tailoring methods of service to meet the needs of particularly difficult cases.  Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts) (citation omitted). The Courts in both cases determined e-mail service to be appropriate in part because, as in this case, the defendants conducted their business over the Internet, used e-mail regularly in their business, and encouraged parties to contact them via e-mail.

Likewise, in cases factually similar to this one, a number of Courts have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." See Popular Enterprises LLC v. Webcom Media Group, Inc., 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (finding that service of process by e-mail was reasonably calculated to apprise defendant of the action and give it an opportunity to respond); In re Int'l Telemedia Associates, 245 B.R. at 722 ("A defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules.  Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party." (concluding e-mail and facsimile service to be appropriate)); Gucci American, Inc. v Does 1-10, 10-cv-60328-JAL (S.D. Fla. July 5, 2010) (Order allowing e-mail service); Chanel v. Lee, Case No. 10-cv-60690-WPD (S.D. Fla. June 18, 2010) (same); Chanel, Inc. v. Li, Case No. 10-cv-60734-PCH (S.D. Fla. June 18, 2010) (same); Chanel et al v. Lee, Case No. 10-cv-60384-JAL (S.D. Fla. June 8, 2010) (same); Chanel, Inc. v. Zhiqing, Case No. 10-cv-60382-AJ (S.D. Fla. June 3, 2010) (same); Chanel, Inc. v. Jin, Case No. 10-cv-60070-JIC (S.D. Fla. April 12, 2010) (same); Tiffany v. Tiffany Jewelry, LTD, Case No. 10-cv-60419 (S.D. Fla. May 14, 2010)

28

(same); <u>Gaffigan v. Jia De</u>, Case No. 09-cv-61206-JAL (S.D. Fla. April 26, 2010) (Order allowing e-mail service); <u>Louis Vuitton Malletier, S.A. v. Does 1-10</u>, No. 1:09-cv-23618-JAL (S.D. Fla. March 30, 2010) (same); <u>Chanel v. Does 1-10</u>, Case No. 1:09-cv-22943-JAL (S.D. Fla. Feb. 25, 2010) (same); <u>Louis Vuitton Malletier, S.A., v. Zhou Guodong</u>, Case 0:10-cv-60350-ASG (S.D. Fla. May 27, 2010) (same).[4] Tiffany submits that allowing e-mail service in the present case is appropriate and comports with constitutional notions of due process, particularly given Defendant's decision to conduct his illegal Internet-based businesses anonymously.

Additionally, service of a defendant via publication on a website has been deemed an appropriate means of service by publication. <u>National Association for Stock Car Auto Racing, Inc. v. Does</u>, 584 F.Supp.2d 824, 826 W.D. N.C. 2008); <u>see also</u> <u>Chanel, Inc. v. Liu Ling</u>, Case No. 2:10-cv-00489-MSD-DEM (E.D. Virginia October 7, 2010); <u>Gucci America, Inc. v. Yan</u>, Case No. 10-cv-61512-WPD (S.D. Fla. August 20, 2010); <u>Chanel, Inc. v. Liu Zhixian</u>, Case No. 10-cv-60585 (S.D. Fla. April 21, 2010); <u>Tiffany (NJ), LLC v. Liu Dongping</u>, Case No. 10-cv-61214-PAS (S.D. Fla. July 20, 2010); <u>Chanel, Inc. v. Cai</u>, Case 2:10-cv-02639-BBD-dkv (W.D. Tenn. September 4, 2010); <u>Louis Vuitton Malletier, S.A. v. Key Lin</u>, Case No. 10-cv-61640-PCH (S.D. Fla. September 8, 2010). A proposed method of publication need only be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." <u>National Association for Stock Car Auto Racing, Inc. v. Does</u>, 584 F. Supp. 2d 824, 826 (W.D. N.C. 2008) (citing <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 315-16, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).  In <u>National Association for Stock Car Auto Racing, Inc. v. Does</u>, the United States District Court for the Western District of North Carolina determined that Plaintiff could serve "Doe"

---

[4] <u>See also</u> <u>MPS IP Servs., Corp. v. Modis Commc'ns., Inc.</u>, Case No. 3:06-cv-270-J-20HTS (M.D. Fla. May 30, 2006) (allowing plaintiffs to effect service on Canadian citizen via e-mail, facsimile and regular mail); <u>Williams-Sonoma, Inc. v. Friendfinder, Inc.</u>, No. C 06-6572, 2007 WL 4973848 (N.D. Cal. Dec. 6, 2007) (allowing e-mail service); <u>Philip Morris USA Inc. v. Veles Ltd.</u>, No. 06 cv 2988, 2007 WL 725412 (S.D.N.Y.  March 12, 2007) (allowing e-mail service); <u>Williams v. Advertising Sex LLC</u>, 231 F.R.D. 483 (N.D. West Va. 2005) (same); <u>MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co.</u>, No. 08 cv 2593, 2008 WL 5100414 (N.D. Ill.  Dec. 1, 2008) (holding e-mail and facsimile service appropriate); <u>Tiffany (NJ), LLC v. TCOMN</u>, Case 2:10-cv-02729-SVW-AJW (C.D. Cal. May 14, 2010) (Order allowing e-mail service); <u>Chanel, Inc. v. Zhibing</u>, Case No. 2:09-cv-02835-cgc (W.D. Tenn. March 17, 2010) (stating that e-mail service has the "greatest likelihood" of reaching e-commerce merchants and noting, "The federal judiciary's own CM/ECF system alerts parties [. . .] by e-mail messages." Alternate service via e-mail granted).

defendants and apprise those defendants of a pending preliminary injunction hearing via publication on the plaintiff's website. Id.  Accordingly, Tiffany has created a website appearing at the URL http://servingnotice.com/lin2/index.html, whereon a copy of the Summons, Complaint, *Ex Parte* Application, and all subsequent pleadings, documents and orders issued in this action will be posted.

As discussed above, in order to ensure that Tiffany's publication on http://servingnotice.com/lin2/index.html is effective, Tiffany has requested the Court order the Registrars for the Subject Domain Names be required to redirect the Subject Domain Names to Tiffany's publication website under the URL http://servingnotice.com/lin2/index.html. Tiffany submits it is reasonable to conclude that Defendant is highly likely to visit his own websites and, therefore, publication on those websites through redirection to http://servingnotice.com/lin2/index.html is highly likely to reach Defendant and any other interested parties. Accordingly, publication of the Summons, Complaint, and *Ex Parte* Application on Defendant's own websites would provide publication notice to Defendant sufficient to meet the due process requirements for service of process and notice pursuant to Federal Rules of Civil Procedure 4 and 65, respectively, and apprise Defendant of the pendency of the action and afford them an opportunity to present their objections.

## 2. E-mail and Publication Service Are Not Prohibited by International Agreement.

As noted above, prior to filing this Application, Tiffany diligently investigated Defendant's addresses and attempted to ascertain a valid address for service of process on Defendant, without success. (Ting Decl. ¶¶ 4-17, 12; Holmes Decl. ¶¶ 7, 11.)  Thus, as a result of Defendant's own efforts to conceal his location, Tiffany is unable to determine his physical whereabouts. (Id.)  However, Tiffany has good cause to suspect Defendant is a resident of China. Specifically, the Tiffany Heart Tag key ring Holmes purchased via Defendant's tiffanyandcofrance.net website was shipped from Hong Kong, China. (Holmes Decl. ¶ 5 and Composite Exhibit 2 attached thereto.)

The United States and the People's Republic of China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Convention"). (Gaffigan Decl. ¶ 6 and Composite Exhibit 5 attached

thereto, Hague Convention and list of signatory Members.)  "[C]ompliance with the Convention is mandatory in all cases to which it applies [. . . .]"  Volkswagonwerk AG v. Schlunk, 486 U.S. 694, 705, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988).  However, according to Article 1 of the Convention, "[the] convention shall not apply where the address of the person to be served with the document is not known."  20 U.S.T. 361 (1969).  See also Popular Enter., 225 F.R.D. at 562; Philip Morris USA Inc. v. Veles Ltd., No. 06 Civ. 2988, 2007 WL 725412, at *2 (S.D.N.Y. March 12, 2007) (e-mail service authorized and the Hague Convention did not apply because, despite physical "addresses" having been provided to defendants' registrars, the actual addresses could not be confirmed as valid); BP Products North America, Inc. v. Dagra, 236 F.R.D. 270, 271 (E.D. Va. 2006) (authorizing service by publication on Pakistani defendant, despite Pakistan's status as Hague Convention member, because "Hague Convention does not apply in cases where the address of the foreign party to be served is unknown").  As the address of Defendant is unknown, Tiffany respectfully submits that the Convention does not apply in this case.

Moreover, though it does not expressly authorize e-mail service, the Hague Convention does not preclude e-mail service, and thus, is no bar to court-directed e-mail service under Rule 4(f)(3).  In fact, U.S. Courts have routinely authorized international mail and e-mail service notwithstanding the applicability of the Hague Convention.  See, e.g., Brockmeyer v. May, 383 F.3d 798, 800 (9th Cir. 2004) ("We join the Second Circuit in concluding that the Convention ... does not prohibit service of process by international mail"); MPS IP Services Corp. v. Modis Communications, Inc., 2007 WL 723841 (Hague Convention, which Canada is a signatory, did not prohibit e-mail service upon Canadian defendants); Popular Enterprises, 225 F.R.D. at 562

### 3.    E-mail and Publication Service Are Not Prohibited by International Law.

Tiffany's counsel has researched whether the issuance of the requested service order pursuant to Rule 4(f)(3) is contrary to or likely to offend the law of the People's Republic of China. (Gaffigan Decl. ¶ 7.)  The law of the People's Republic of China does not appear to prohibit the service of process by e-mail and allows for alternate service means, including publication, in certain circumstances. (Gaffigan Decl. ¶ 7 and Exhibit 6 attached thereto, "Civil Procedure Law of the People's Republic of China".)  For example, Article 80 of the law specifically provides that "[i]f direct service of a litigation document proves difficult, […] it may

be served by post [….]."(Id.)  Additionally, Article 84 of the law provides that if the whereabouts of a recipient of the service is unknown, or if a document cannot be served by the other methods reflected in the law, a document shall be served by public announcement. (Id.)  Hence, Tiffany submits that allowing service of process upon Defendant in this case via e-mail would be consistent with and not prohibited by the Civil Procedure Law of the PRC. Tiffany further submits that posting a copy of the Summons and Complaint on its publication website will satisfy the non-specific publication requirement of Article 84 of the Civil Procedure Law of the People's Republic of China.

## IV.   <u>CONCLUSION</u>

Plaintiff respectfully requests this Court grant its *ex parte* application and enter a temporary restraining order, schedule a hearing on Plaintiff's Motion for Preliminary Injunction before the expiration of the Temporary Restraining Order, and enter an order authorizing service of the Summons and Complaint, including all subsequent pleadings and discovery in this matter, upon Defendant Key Lin via e-mail at the e-mail addresses admin@bijoux-tiffany.com, wesaleworld@hotmail.com, low2010sneakers@hotmail.com, shoes2010sell@hotmail.com, nederlandstore@hotmail.com, admin@tiffanyandcobijouxfrance.com, admin@tiffanyandcofrance.com, zbinsheng@yahoo.com, tiffanyandcopascher@yahoo.com, tiffanydeutschland@yahoo.com, cheapsell-shoes@hotmail.com, good.worlds@hotmail.com, qidvn456123@yahoo.cn, buygoodsfrance@foxmail.com, shoeslow2010@hotmail.com, youid198@yahoo.com, shoeslow@hotmail.com, and admin@tiffanysde.com, and via publication on the Plaintiff's Internet website appearing at the URL http://servingnotice.com/lin2/index.html.

Dated:  October 14, 2010             STEPHEN M. GAFFIGAN, P.A.

By:  _____s:/smgaffigan/_____
    Stephen M. Gaffigan (Fla. Bar No. 025844)
    401 East Las Olas Blvd., #130-453
    Ft. Lauderdale, Florida 33301
    Telephone: (954) 767-4819
    Facsimile: (954) 767-4821
    E-mail: Stephen@smgpa.net

    Attorneys for Plaintiff Tiffany (NJ), LLC